**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Robert Walker,** ) | **CASE NO. 1:17 CV 2447** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| **v.** ) | |
| ) | **Memorandum of Opinion and Order** |
| **Tom Miller,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### Introduction

This matter is before the Court upon defendant Dr. Dawes' Motion for Summary Judgment (Doc. 30). This is a § 1983 action brought by a former pretrial detainee. For the following reasons, the motion is GRANTED.

### Facts

*Pro se* plaintiff Robert Walker filed this action under 42 U.S.C. § 1983 against numerous defendants. This Court dismissed the Complaint *sua sponte* pursuant to 28 U.S.C. §1915(e). On appeal, the Sixth Circuit affirmed the dismissal of all the defendants except for the deliberate indifference claims against plaintiff's treating physicians: Medina County Sheriff's Department physician John Doe 1 and Heartland Behavioral Healthcare physician John Doe 2.

An Amended Complaint was filed identifying these defendants as Dale Thomae and Dr. Michael Dawes (in their individual and official capacity), and alleging the following. Plaintiff

was arrested on November 25, 2015, and transported to the Medina County Jail. He informed medical staff that he was very ill, in constant pain, and bleeding internally. He had one visit with Thomae, the Medina County Sheriffs Department treating physician, who did nothing to attempt to diagnose the condition but instead referred plaintiff "to psych." Plaintiff filed 32 grievances, regarding the pain and internal bleeding, which were rejected. Plaintiff took a shampoo cap with vomited blood to show medical personnel, but was again only referred "to psych."

At the end of February 2016, plaintiff was transferred to Heartland Behavioral Hospital for a competency evaluation. Dr. Dawes, the treating physician, refused to follow up with plaintiff. Plaintiff filed more grievances complaining about his inability to receive medical attention for his intense pain and internal bleeding. After plaintiff filed a complaint with the patients' rights board, he saw "the doctor" who ordered stool samples which showed massive amounts of blood. Dawes falsified the reports, stating there was no blood in the stool and that the pain was psychosomatic.

In May 2016, plaintiff was released when the criminal charges against him were dismissed. Ultimately, on March 1, 2017, plaintiff was diagnosed with stage 4 colon cancer.

Plaintiff asserts one ground for relief: Defendants' actions were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. As the Court is addressing the motion filed by Dawes, only the facts relevant to this defendant will be discussed.

Dawes submits his affidavit and exhibits. He avers that he has been employed by Heartland, a state hospital which provides inpatient care for acutely mentally ill adults, since 2012. Although it is a psychiatric hospital, patients presenting to Heartland with acute medical

problems also receive medical treatment. Patients committed for competency restoration (a short, set amount of time) receive medical treatment for acute and emergency medical conditions, but long-term and/or chronic conditions requiring long-term care may not be treated there. On February 24, 2016, plaintiff was admitted to Heartland for 60 days for a competency restoration. While there, plaintiff received frequent medical treatment and evaluations from physicians, certified nurse practitioners, and registered nurses. As supported by the History and Physical Examination record and History and Physical Initial Findings Summary, Dawes examined plaintiff on February 25, 2016, when he performed a comprehensive history and physical examination. Plaintiff claimed to have had recent rectal bleeding, but denied any change in appetite, nausea, vomiting, abdominal pain, melena, gastric reflux, constipation, or diarrhea. On March 17, 2016, a guaiac stool test which looks for hidden blood was ordered by nurse practitioner Lila Jenkins. The order shows that the test was to be performed three times on separate samples. On March 20, 2016, a stool sample was collected with a negative result, i.e., it did not detect fecal occult blood above the normal threshhold. On March 24, 2016, a second stool sample was collected, also with a negative result. Plaintiff refused to provide a stool sample for the third test. Dawes did not participate in the collection or testing of the stool samples, determining the results, or filling out the reports detailing the negative results. Plaintiff was discharged on April 22, 2016, after being restored to competency. (Dawes aff.)

Sherria Neel-Black, Lab Technician 2 at Heartland, presents her affidavit which avers the following. She performs occult blood stool testing, and sets forth in great detail the testing procedures in place in 2016 (aff. ¶ 4 a-m). She performed the Immunochemical Fecal Occult Blood Test, ordered by nurse practitioner Jenkins, on stool samples taken from plaintiff on

3

March 20 and 24, 2016. Both had negative results which she recorded on reports of the test. These test results have not been edited or altered. While nurse practitioner Jenkins ordered the collection and testing of a third stool sample from plaintiff, he refused to provide a sample on three occasions - April 19, April 20, and April 21, 2016. This is documented on the requisition form. (Neel-Black aff.)[1]

The Court has done its best to set forth the following version of the facts discussed in plaintiff's brief.[2] Many of the facts have no reference to any exhibit or other evidence, and the exhibits which plaintiff attaches to his brief are unauthenticated.[3]

In February 2017, plaintiff went to Dr. Khurram Bari who ordered a colonoscopy. Bari was in disbelief that plaintiff had never had one although he had seen many doctors over the previous two years. On March 1, 2017, Dr. Bari attempted, but was unable to perform, the

---

[1] Submitted with and authenticated by the affidavits are the following exhibits: Ex. A- Occult Blood Report (sample collected March 20, 2016, negative result); Ex. B- Occult Blood Report (sample collected March 24, 2016, negative result); Ex. C- requisition form for guaiac stool (indicating three refusals of April 19, 20, 21); Ex.D- Heartland Admission Record dated February 24, 2016; Ex. E- History and Physical Examination form (dated February 25, 2016); Ex. F- History and Physical Initial Findings Summary; Ex. G- order for three guaiac stool tests (dated March 17, 2016); Ex.H- Nursing Note (service date March 20, 2016); Ex. I - Nursing Note (service date March 24, 2016); Ex. J- Nursing Note (service date April 7, 2016); Ex. K- Nursing Note (service date April 11, 2016); Ex. L- Discharge Summary/ Instructions (dated April 22, 2016).

[2] Plaintiff's facts are intertwined with his opinions and arguments. The Court has attempted to set forth a version of his facts only. Additionally, plaintiff discusses facts unrelated to his claims. The Court has only addressed facts related to the claims he sets forth against Dawes, i.e., that he "refused to follow up with plaintiff," and eventually ordered stool samples, but falsified the reports to state that there was no blood in the stool.

[3] As discussed below, given that plaintiff is *pro se*, the Court has reviewed the inadmissible materials and found that, even if they were properly authenticated, they would not warrant a denial of defendant's motion.

4

colonoscopy due to a large tumor blocking access to the colon. A biopsy confirmed stage 4 colorectal cancer. On March 2, 2018, plaintiff had emergency surgery to remove the tumor and "lymphoids," and reroute organs. (Exs. A-C)

The Heartland orders completed by Dawes and dated March 31, 2016, show that plaintiff was ordered milk of magnesia for upset stomach and constipation, and acetaminophen for pain or temperature over 99. (Ex. H) He states that the February 24, 2016 Nursing Assessment details breakthrough pain, but the exhibit is not attached. (Ex. I) The February 25, 2016 treatment plan states, in part, that plaintiff "has a problem of chronic pain" and the "goal" is to "have resolution or improvement of his pain." The "objective" is that plaintiff "will receive medical treatment to manage pain." And, plaintiff "will be referred to Dr. Dawes/Designee for management of pain" (Ex. J) The Heartland Discharge Narrative Summary, completed by nurse practitioner Lila Jenkins in May 2016, refers to plaintiff's "concern during his stay about his lack of medical care and [that he] did have to initiate complaints with John Soccer, the patient advocate, to try to get the medical care that he thought he needed." (Ex. K)

Plaintiff also makes the following statements in his brief which are not supported by evidence. He explained his "concern with his failing health problems" to nurse practitioner Jenkins during his initial interview, and Jenkins sent an email to Dr. Dawes to ask him to address these issues. Jenkins went to talk with Dawes after he failed to see plaintiff. Jenkins then introduced plaintiff to patient liaison John Soccer. Soccer opened an investigation after meeting with plaintiff into why Dawes had failed to provide plaintiff with medical care. After, Jenkins ordered the stool tests, a nurse observed so much blood in the second stool sample that

5

she contacted the head nurse for fear of plaintiff becoming anemic. When the test result was deemed negative, plaintiff went to Soccer. Soccer spoke to the nurse who identified the bloody stool and "it was determined that someone screwed something up somewhere. As defendant Dawes was the medical physician charged with providing plaintiff his health care, the anomaly fell in his lap." (Doc. 31 at 8) Plaintiff "started a hunger strike to protest the lies being perpetrated by defendant Dawes and when the third stool sample couldn't be obtained it wasn't so much a refusal as there was no sample to give." (*Id.*)

This matter is now before the Court upon defendant Dawes' Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc*., 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

As the Sixth Circuit noted in its Order vacating the dismissal of the deliberate indifference claims against the treating physicians:

> An Eighth Amendment violation occurs if a prison official acts with deliberate indifference to a prisoner's serious medical needs. *Dominguez v. Corr. Med. Servs*., 555 F.3d 543, 550 (6th Cir. 2009). While the Eighth Amendment applies only to convicted inmates, pretrial detainees are entitled to the same protections under the Due Process Clause of the Fourteenth Amendment. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir.

7

> 2018). To show deliberate indifference, a prisoner must show that the prison official knew that the inmate faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

*Walker v. Miller,* No. 18-3209 (6th Cir. Oct.17, 2018).

As pointed out above, the Amended Complaint makes two allegations against Dawes: after plaintiff was transferred to Heartland, Dawes "refused to follow up with plaintiff," and "falsified reports [of the stool sample tests], stating there was no blood in the stools and that the pain was psychosomatic."

### (1) falsification of reports

Defendant Dawes first argues that there is no evidence that he falsified the stool testing reports. For the following reasons, this Court agrees.

The Sixth Circuit noted that while "a doctor's errors in medical judgment are insufficient to establish deliberate indifference,"falsifying reports would amount to an Eighth Amendment violation. *Walker, supra.* However, there is no credible evidence that Dawes did so. As discussed above, the evidence shows that Dawes did not participate in the testing of the stool samples or in the filling out of the reports showing the results. The requisition shows that nurse practitioner Jenkins ordered the three separate stool tests and that she was to be notified of the results. Neel-Black's affidavit, and supporting exhibits, shows that she performed the stool testing according to an established procedure. After performing the two stool tests, she reported the negative results on the Occult Blood Report. She avers that neither of these two reports have been altered or edited since she performed the tests and filled out the reports. Neel-Black's affidavit and exhibits further show that plaintiff refused three times to provide the third stool

8

sample. Additionally, the Nursing Notes from April 7 and 11 describe plaintiff's refusal to eat despite the nurses' encouragement and "multiple prompts." The notes further describe that the nurses were aware of the order requiring the third sample, but were unable to collect it and plaintiff refused to use the hat placed in the toilet for the collection.

Plaintiff's assertions that the results of the tests were falsified by Dawes are purely speculative and unsupported by any evidence. Plaintiff's factual assertions in his brief that the second stool test showed such large amounts of blood that the nurses feared he was anemic, is, again, unsupported by documentary evidence or sworn testimony. Nor do his medical records support the assertion. Thus, there is no issue of fact as to this allegation against Dawes.

**(2) refusal to follow up**

Plaintiff alleges that when he was transferred to Heartland, Dawes refused to follow up with plaintiff and he had to file a grievance regarding his inability to receive medical attention for his serious medical needs.

Defendant Dawes argues that plaintiff's allegation is unsupported. For the following reasons, this Court agrees.

It is well-established that "a § 1983 claim for deliberate indifference regarding a prisoner's medical care consists of an objective component and a subjective component, both of which must be satisfied." *Darby v. May,* 2020 WL 1171544 (N.D.Ohio March 11, 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "The objective component requires the existence of a 'sufficiently serious' medical need. The subjective component requires an inmate to show that prison officials have a sufficiently culpable state of mind in denying him medical care." *Id.* "In order to satisfy this culpable state of mind, the prison official 'must both be aware of facts

9

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.*

Plaintiff seems to allege that he received no medical attention until he filed a grievance, and that "when he finally saw the doctor he ordered stool samples." However, the evidence shows that plaintiff was admitted to Heartland on February 24, 2016, for 60 days for a competency restoration. The Admission Record lists nurse practitioner Jenkins as the admitting doctor. The following day, February 25, 2016, Dawes examined plaintiff and completed a detailed History and Physical Examination. It was noted that while plaintiff claimed to have had recent hematochezia (bloody stools), he "denied any change in appetite, any nausea, vomiting, abdominal pain, melena, gastric reflux, constipation, or diarrhea." (Dawes aff., Exs. D, E) About three weeks later, on March 17, 2016, a guaiac stool test which looks for hidden blood was ordered by nurse practitioner Jenkins. As discussed above, the first two tests were negative, and plaintiff refused to provide the third sample on April 19, 20, and 21, 2016. Plaintiff was discharged on April 22, 2016.

On this basis, there is no evidence that Dawes was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" to satisfy the subjective component. Nor is the objective component satisfied because the initial history/examination and the stool sample test results did not show "the existence of a sufficiently serious medical need."

Plaintiff points to the various Heartland documents referring to pain, but the objective tests which were performed were negative. Additionally, Jenkins' summary which notes plaintiff's worry about his lack of medical care references only plaintiff's concern that he had a broken jaw when admitted, and that he could not get his medication for hepatitis C.

10

Plaintiff's argument that Dawes must have erred because he was diagnosed with stage 4 cancer one year after being released from Heartland, is simply insufficient to establish an Eighth Amendment violation. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A doctor's exercise of medical judgment, even if incorrect, does not constitute deliberate indifference to an inmate's serious medical needs. *Id.* at 107.

For these reasons, there is no issue of fact as to this allegation against Dawes. Consequently, Dawes is entitled to summary judgment on the Eight Amendment claim.

**(3) Eleventh Amendment immunity**

As discussed herein, defendant Dawes is entitled to summary judgment on the claim against him. Dawes has been sued in both his individual and official capacities for money damages. The Amended Complaint acknowledges that defendant Dawes is an employee of the State of Ohio. Dawes' affidavit explains that he is employed by the Ohio Department of Mental Health and Addiction Services at Heartland, and that Heartland is a state hospital. It is well-established that lawsuits against employees in their official capacities are lawsuits against the state, and that (in the absence of a waiver not present here) states are immune from monetary claims under the Eleventh Amendment. *Qiu v. University of Cincinnati,* - Fed.Appx.-, 2020 WL 634036 (6th Cir. Feb. 11, 2020). Therefore, even assuming survival of the individual capacity claim, the official capacity claim fails as well.

**Conclusion**

For the foregoing reasons, defendant Dawes' Motion for Summary Judgment is granted.

IT IS SO ORDERED.

        /s/ Patricia A. Gaughan  
        PATRICIA A. GAUGHAN  
        United States District Court  
Dated: 3/19/20        Chief Judge